Good morning, Your Honors. May it please the Court, Scott Mossman for the Petitioner, William Lopez. So the government's 28J letter pretty much all but concedes that if the only issue before this Court were social group, that we should remand. So I'm going to focus on the other issues in the case. I'm sorry, say that one more time. I had trouble hearing you. I have trouble hearing you and I didn't understand what you said. Sure. So I filed a 28J letter and my understanding of the government's response was doesn't matter about social group because we should, the Court should deny on these other reasons. Basically not even contesting that the case should be remanded. Well, not contesting isn't the same thing as conceding. But what about nexus? Your Honor, I can't really understand from the Board's decision whether it was denying for nexus or because the social group wasn't cognizable. It was a very brief part of the decision and the cases it cited in denying were focused on whether the social group is cognizable, not whether there was a nexus to that social group. What is the social group for this, for Mr. Lopez? The social group is individuals who have taken concrete actions to resist guerrilla conscription and escape from it. But what was the resistance here? What did he do? He said, no, I don't want to join your group. And then once he was in their custody, he ran away at great danger to himself. Okay. So then as Judge Christian asked, what was the nexus, assuming that's the group? The nexus is that, you know, if they were going to, you know, impress him into the guerrillas and Let me, I'm sorry to interrupt your train of thought. Move your mouth just a little bit closer to the mic because it kind of cuts in and out from your distance. Yes, Your Honor. Counsel, maybe I could just put a finer point on my question. I'm looking at ER-4. It says we also agree with the immigration judge that the harm alleged did not have a nexus to the protected ground. Okay. So I think it's a pretty clear ruling on that point. And then it goes on to express the, explain that there was not a finding that he had expressed a political opinion. So that's what I'm getting at. Yes, Your Honor. I'm aware of that. Okay. So it puts together nexus and protected ground. Right. So did this, this, did this persecution that he claims to, to have suffered, was it connected to, was it because of a protected ground? That's my question. Yes, Your Honor. But our position is the board didn't even get to that question. Well, counsel, they did. I mean, that's what, that's what I just read to you. We also agree with the immigration judge that the harm alleged did not have a nexus to the protected ground. So there's two components to that. Uh-huh. Nexus and protected ground. Right. And then it moves on to discuss political opinion and social group. It doesn't talk about nexus, which is, was that harm on account of one of those groups, but it's talking about whether or not those, was there a political opinion and then was that social group even cognizable? So, you know, the way I understand it is nexus is proving that there's something really in these facts related to a social group or a political opinion that could be considered. And, you know. Well, as I read the same passage that Judge Christin is pointing you to, I think the BIA at that point, now the law has changed a little bit, but the BIA at that point is saying there is no protected ground here. I mean, I think they're basically saying when someone says to a guerrilla group, I do not want to join you, that in itself is not a protected ground. Now, they don't quite spell it out, but the law was at that time, it's not a protected ground unless they say, I'm not going to join you because I disagree with you politically. And there's nothing in the record that suggests he ever said that to them. So I think as the law then stood, I think they were right. Now, we've changed our definition of social groups since then. So if they were to decide today whether or not it's a protected ground and social group, I'm not quite sure what the answer is. But I think what they said is that's not a protected ground, given the facts they had in front of them and the law that they were then dealing with. Am I missing something? Your Honor's articulating it much better than I was. Yeah, and I think it's clear from what the two sentences that follow that, because it goes into not what the facts of what actually happened, but it goes into political opinion and then it goes into social group. And then all it does for social group is cite two cases involving gangs, not even anything to do with guerrillas, saying we can't even, this is a type of group we've rejected before, and so we're not going to consider it here. Yeah. So let's get back to the point that was in a way with which you began, which is to say, assuming for the moment that the government is willing to say that it's possible that under the current definition of social group, he fits one, assuming for the purposes of what I'm about to say, you've still got the problem that the level of persecution. So how do you respond to that? And I think it's pretty clear that that's what the board focused on. Everything else was just an afterthought. So the board gave three reasons for finding the harm didn't rise to the level of past persecution. First, it said he was in their custody for a very short time. Second, he wasn't physically harmed. And third, there was no threat of imminent danger. So I'll take those one by one. The fact he was in their custody for a very short time, that doesn't really mean much when he escapes from their custody. The case that the board cited, Gu versus Gonzalez, is where the police of a country took a person into custody, detained him for three days and then released him. The fact that Mr. Lopez was able to escape, I don't think that undercuts the level of harm. True, he wasn't physically harmed. But as we cited in our briefs, there's at least three Ninth Circuit cases where the was absolutely no accompanying harm. Well, that's, I agree with you there. But what evidence is that he was targeted because of his resistance? Well, I think that's, that was what happened when he was in their custody. I'm not talking about whether he was grabbed off the street. But once he articulated it to them, said, I'm not joining you, that's, that's where it would have been the harm. I mean, that's where. So, wait a minute, that's exactly my problem with this case. So maybe, could you spend another minute right there? Okay, maybe. Instead of that shrug, if you could just articulate your shrug right there. Your Honor, maybe it would be more helpful to me if you could explain to me what your issue on that is. I'm still looking for the nexus between the protected ground and this claim to persecution. I fully appreciate that there are other problems with the case, which is whether it rises to the level of. But what's your strongest evidence that this was on account of a protected ground? Well, they didn't release him. They said, I don't want to join you. They kept him at gunpoint and they held him hostage after that. All right. You know, it's not well developed on that issue, but I think this court. Your best shot, that's all I wanted. I get the shrug. Sure. I'm ready. Okay, go ahead. All right, great. Next issue, board asserted there was no threat of imminent harm. And it cited two cases for that. And both of those cases said threats are, you know, that wasn't past persecution. But I want to point out that the two cases cited by the board, Hoxha versus Ashcroft and Lim versus INS, both of them were threats made against a person who was not in the custody of the person threatening. So this happened in 1990, right? Yes. And his contention is that individual might still recognize him because he was a neighbor. Yes. And not that people are still trying to recruit for this endeavor that was ongoing in 1990, but that now that neighbor is part of a gang. Absolutely. But his parents lived very close to that individual and they haven't had any problem. Well, the parents weren't in the, I mean, what, he's afraid of this person because he said, no, I don't want to be part of your guerrillas and escape from them. He's not afraid of that individual just as all the other people of the neighborhood like his parents would be, just generally afraid of the gangs. And this is an important point. I mean, he's afraid because of what happened in the past and why that fear is still objectively reasonable is because this guy is still involved in violence. That's what he testified. Who's this guy? The neighbor? Chile. Chile. Well, what did he testify to about the ongoing? I know that he discussed that this person is in a gang, but his parents are still neighbors and there hasn't been any harm. So. We're not arguing that everybody in the neighborhood, like his parents or anyone else, is going to be harmed by this former guerrilla. What's the best argument you have that your client faces a risk? Because he escaped from this man and what he testified to was if he's in a gang now, anything can happen. He's still involved in violence. And that's what his attorney argued to the board is. Do you know anything about the gang, whether it's a violent gang? No, we don't. So he fears persecution by this individual because he resisted him previously. Is that it? That's right. And because that person, Chile, lives within some proximity to his parents. Is that what it comes down to? Yes. I assume my time's out, but I. What's the best? Can maybe just ask one more question? So long as we're asking questions, you get to talk. We'll worry about the time you don't have. Okay. I did want to reserve. What is the best indication that he has to show that this individual is likely to recognize him? I don't think there's nothing in the record about that. You know, I think that the primary problem with well-founded fear is that the board didn't address the fact that this guy is now a gang member, didn't address how that makes this person still a dangerous person. Chile is still a dangerous person. They didn't even address that. That's why I think you have to remand on that issue. Okay. Why don't we hear from the government? And we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Alexander Lutz on behalf of the Attorney General of the United States. Your Honors, in your questioning just a moment ago, you zeroed in on really the dispositive issue in this case, especially, Your Honor, Judge Christin, which is that there's nothing in the record that shows that there's a risk of harm to the petitioner from his proximity to this Chile individual upon removal, where there's no evidence in the record compelling the conclusion that the petitioner suffered harm in the past that rises to the level of persecution or has an objectively reasonable fear of future harm that would rise to the level of persecution. And the particular social group issue that the petitioner focuses on in light of recent changes in the law is really a red herring. It's academic at this point. As the Court is, of course, well aware, Rule 1, Requirement 1 of asylum and withholding and removal is demonstrating persecution, which is a pretty extreme concept. It's not just any harm. It's not just any fear. In this case, the record simply does not compel the conclusion that Mr. Lopez either suffered past harm rising to persecution or will suffer future harm, objectively speaking. Well, he was abducted, and he says he was held at gunpoint. And I've already voiced that it doesn't seem to me that there's anything in the record to indicate a nexus that is that he was abducted because of voicing a particular  But once he was in, I'll say, captivity, being held that night, he, I guess, opposing counsel's position is that he voiced a political opinion by refusing to join them. Well, Your Honor, I suppose I'd raise two points in response to that. One is that nothing, nowhere in the Petitioner's opening brief did they discuss this political opinion argument, although it seems that the agency and the testimony before the IJ and the Board did discuss that. So we would submit that that issue was improperly before the Court at this point. And secondly, I'd reiterate my earlier point, Your Honor, that the Court doesn't even really need to get to the nexus question, because what are we looking for a nexus to? Where's the harm? The Court has repeatedly held that threats, I'm quoting now actually from Lim v. Ines, threats standing alone constitute past persecution only in a small category of cases, and only where the threats are so menacing as to cause significant actual suffering or harm. The Petitioner's right that on occasion, past threats can rise to the level of persecution. But the fact patterns in the cases where the Court has held that are really extreme. And the Petitioner here was threatened on one occasion and was never actually harmed. One threat with no actual harm simply doesn't match up to the level of egregious repeated death threats that could constitute persecution in this case. So without any past harm rising to the level of persecution, the nexus question simply doesn't need to be reached. In regards to the question of well-founded fear of future persecution, as Your Honor discussed in the questioning during Petitioner's time, there's no evidence in the record that Chelley even still knows who the Petitioner is. The Petitioner's articulation of his fear before the IJ, and I'm quoting now from page 206 of the administrative record, is, my fear is that if I go back, I'm going to run to that same person, we're talking about Chelley, of course, that he's going to still be holding on to what happened back then, and he's still going to resent me for it. If he's in a gang, anything can happen. So the question really is, is Chelley, objectively speaking, going to harm Mr. Lopez? In order to demonstrate a well-founded fear of future persecution, that fear needs to be both subjectively genuine, which a Petitioner can establish through his own testimony, but it also needs to be objectively reasonable, and I'm citing here to the Court's opinion in Lolong v. Gonzalez. An objectively reasonable fear is one that is supported by credible, direct, and specific evidence. Where's the evidence in this administrative record that compels the conclusion that Mr. Lopez is going to have a problem with Chelley? Mr. Lopez has been in the United States until his removal, had been in the United States since 1990. There's no evidence that Chelley even remembers who Mr. Lopez is. Chelley hasn't looked for Mr. Lopez in the United States. He hasn't asked Mr. Lopez's family, hey, where's Mr. Lopez? Well, he doesn't have to ask. Don't we look at the record to see what he said? And so we take that as undisputed. And because the BIA and IJ did not make credibility determinations. So giving him the benefit of the doubt, everything that he said, what did he say that would establish that there isn't a reasonable basis for persecution in the future? Well, Your Honor makes a very good and accurate point that without an adverse credibility finding, without any finding on that point, we do assume that his testimony was credible. But then we have to split up the questions of subjectively genuine fear and objectively reasonable fear. That first one, subjective genuineness, that we can give Mr. Lopez the benefit of the doubt on. And we must, right? Yes, Your Honor, that's right. That can be established through the petitioner's credible testimony. But the objective reasonability of a well-founded fear of future persecution requires, again, credible, direct, and specific evidence. And there's simply no evidence in the record. Your Honor's questioning, again, really touched on this point better than I could. I mean, the fact that Mr. Lopez has a great deal of family living in the same village as this Chaley individual, and that's the only way Mr. Lopez even knows that Chaley is still there, and they haven't had any trouble with him, they haven't had any trouble with this gang, there's no evidence in the record on that point, really speaks to the fact that he — Well, there's no evidence, but not that he said they haven't had. They've never had any problem with him, right? Well, he didn't specifically say, my family entirely has never had any problem with the gang, if that's Your Honor's question. But in order to remand this case on this basis, the Court would have to find under the substantial evidence standard that there's clear evidence in the record that compels a conclusion contrary to what the Board and what the IJ held, which is that there's no well-founded fear of future persecution here. On this record, there simply isn't enough evidence to get to that point. On this record, the — well, the fear of persecution in the future that Mr. Lopez has is simply speculative. There's no evidence in the record. So you — do you — it's your position, then, that the fact that the law has changed, that men challenging guerrilla recruitment can be a social group, is irrelevant? It makes no difference? I'm sorry. Could you repeat that question? Well, now that — merely because the BIA wrongly concluded that men challenging guerrilla recruitment can never be a social group, that's no longer an issue. That's not an issue in this case. Well, I would make a couple of points again in response to that. First of all — I mean, it doesn't need to be remanded because the law has changed. Oh, certainly not. No. No, no, no. Now there's — now that type of group or that group can be recognized. Well, I don't believe that — As a social group. Under certain facts, I suppose it could be, Your Honor, but we simply don't have those facts here. But you're correct. We are arguing that the case certainly doesn't need to be remanded on that issue. The Supreme Court in the Bagham-Haspad case and this Court in Shrestha have pretty clearly articulated the rule that where there are issues in a case that are not necessary to disposition of the case, the court simply doesn't need to reach them. The court doesn't need to get into the weeds on a particular social group in this case, doesn't need to consider the nexus issue, because what are we looking for a nexus to? Some kind of harm rising to the level of persecution. And there's no evidence in the record that that's going to happen. There's certainly not enough evidence in the record to compel the conclusion that the board and the IJA are on that point. Excuse me. I've got a more general question. Yes, sir. Given the sorts of removal cases that we tend to see nowadays with the administration focusing on removal of those who have engaged in various forms of undesirable behavior, this is not the normal case anymore. How did he come to be in proceedings? Was it an application for asylum? The record is not entirely clear on that point, Your Honor, but I believe it was a referral from his asylum interview. No criminal history? He certainly does have a criminal history, Your Honor. Pages 174 to 175 of the record indicates that he has at least four convictions for driving under the influence. He also had a number of other. I'm sorry. He has DUI convictions, right? He has at least four DUI convictions. And he had other arrests for, I think, a theft charge, but those didn't result in conviction. Oh, they didn't. No. So the convictions that we have on this record are the DUIs, yes, but those are still significant enough that it would remain a priority. Although, further to Your Honor's question, I might note that we reached out to the Petitioner to discuss possibly placing this case in abeyance to continue to review that issue, and the Petitioner's position was to file a written opposition to that motion, which is why the case proceeded forward to argument. So we didn't need to do that. That's an interesting problem. The Petitioner says I don't want to have this case held in abeyance? I believe that's right, Your Honor, and certainly the Petitioner can speak to his position on that more clearly than I can, but the written response that the Petitioner filed indicated that after the removal of Mr. Lopez, they didn't have an interest in holding the case in abeyance any further. Okay. Okay. Are there any further questions from the Court? No. In that case, Respondent respectfully requests that the Court deny the petition for review. Okay. Thank you, Your Honors. And you wanted to save some time for removal and we took you over time, so let's put a minute on the clock and see what happens. You're not going to really remove him? Your Honor, the government said a couple of things. It said we should deny on substantial evidence for no well-founded fear of persecution. Our argument isn't exactly that, that there's substantial evidence. Our argument is that the Board did not even consider the fact that the person who it was afraid of was in a gang. So we can't get to whether there was substantial evidence on that. Second thing, this Court did grant in Bruano where the Petitioner was closely confronted, but not actually harmed. And that, we would say that that's the closest case to our case. As for putting the case into mediation and possibly closing the proceedings, what we actually said was he's out of the country and he doesn't qualify. And then once we brought that fact to the government's attention, they said, oh, no, he doesn't qualify. But that was the other government attorney who said that. Okay. Thank you. Thank you. Thank you very much. Lopez v. Holder submitted for decision.
judges: Silver, Fletcher, Christen